**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| HEXCEL CORPORATION, JOEL S. | : **SECURITIES EXCHANGE ACT OF** |
| BECKMAN, LYNN BRUBAKER, JEFFREY | : **1934** |
| C. CAMPBELL, CYNTHIA M. | : |
| EGNOTOVICH, THOMAS A. GENDRON, | : **JURY TRIAL DEMANDED** |
| JEFFREY A. GRAVES, GUY C. HACHEY, | : |
| NICK L. STANAGE, and CATHERINE A. | : |
| SUEVER, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Hexcel Corporation ("Hexcel or the "Company") and the members of Hexcel's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Hexcel and Woodward, Inc. ("Woodward").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on February 28, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Genesis Merger Sub, Inc., a direct, wholly-owned subsidiary of Woodward ("Merger Sub"), will merge with and into Hexcel, and Hexcel will survive the merger and become a wholly-owned subsidiary of Woodward (the "Proposed Transaction"). Pursuant to the terms of the Agreement and Plan of Merger the companies entered into (the "Merger Agreement"), each outstanding Hexcel common share of beneficial interest will be converted into the right to receive 0.6250 shares of Woodward common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked Hexcel's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending that the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisor of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs"), in conducting the valuation analyses in support of its fairness opinion. The Registration Statement also omits or misrepresents information regarding the financial analyses conducted by Goldman Sachs.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Hexcel's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant Hexcel is incorporated in Delaware, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Hexcel in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Hexcel common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Joel S. Beckman has served as a director of the Company since 2005.

11. Individual Defendant Lynn Brubaker has served as a member of the Board since 2008.

12. Individual Defendant Jeffrey C. Campbell has served as a member of the Board since 2003.

13. Individual Defendant Cynthia M. Egnotovich has served as a member of the Board since 2015.

14. Individual Defendant Thomas A. Gendron has served as a member of the Board since 2010, and is the Chairman, Chief Executive Officer and President of Woodward.

15. Individual Defendant Jeffrey A. Graves has served as a member of the Board since 2007.

16. Individual Defendant Guy C. Hachey has served as a member of the Board since 2014.

17. Individual Defendant Nick L. Stanage has served as a member of the Board and the Company's Chief Executive Officer and President since 2013, and Chairman of the Board since 2014.

18. Individual Defendant Catherine A. Suever has served as a member of the Board since 2018.

19. Defendant Hexcel is incorporated in Delaware and maintains its principal offices at Two Stamford Plaza, 281 Tresser Boulevard, Stamford, Connecticut 06901-3238. The Company's common stock trades on the New York Stock Exchange under the symbol "HXL."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

22. The Company, together with its subsidiaries, develops, manufactures, and markets structural materials for use in commercial aerospace, space and defense, and industrial markets. It

4

operates in two segments, Composite Materials and Engineered Products. The Composite Materials segment manufactures and markets carbon fibers, fabrics and specialty reinforcements, prepregs and other fiber-reinforced matrix materials, structural adhesives, honeycomb, molding compounds, tooling materials, polyurethane systems, and laminates that are used in military and commercial aircraft, wind turbine blades, recreational products, and other industrial applications, as well as in automotive, marine, and trains. The Engineered Products segment manufactures and markets aircraft structures and finished aircraft components, including wing to body fairings, wing panels, flight deck panels, door liners, helicopter blades, spars, and tip caps; and aircraft structural sub-components and semi-finished components used in helicopter blades, engine nacelles, and aircraft surfaces, such as flaps, wings, elevators, and fairings. The Company sells its products directly through its managers, product managers, and sales personnel, as well as through independent distributors and manufacturer representatives in the Americas, Europe, the Asia Pacific, India, and Africa. Hexcel was founded in 1946 and is headquartered in Stamford, Connecticut.

23. On January 12, 2020, the Company and Woodward jointly announced the Proposed Transaction:

> FORT COLLINS, Colo. & STAMFORD, Conn.--(BUSINESS WIRE)--Woodward, Inc. (NASDAQ: WWD) and Hexcel Corporation (NYSE: HXL) today announced a definitive agreement to combine in an all-stock merger of equals to create a premier integrated systems provider serving the aerospace and industrial sectors. The combined company will focus on technology-rich innovations to deliver smarter, cleaner, and safer customer solutions.
>
> Under the terms of the agreement approved by the Boards of Directors of both companies, Hexcel shareholders will receive a fixed exchange ratio of 0.625 shares of Woodward common stock for each share of Hexcel common stock, and Woodward shareholders will continue to own the same number of shares of common stock in the combined company as they do immediately prior to the closing. The exchange

ratio is consistent with the 30-day average share prices of both companies. Upon completion of the merger, existing Woodward shareholders will own approximately 55% and existing Hexcel shareholders will own approximately 45% of the combined company on a fully diluted basis. In connection with the transaction, Woodward is increasing its quarterly cash dividend to $0.28 a share. The merger is expected to be tax free for U.S. federal income tax purposes.

The combined company, to be named Woodward Hexcel, will be among the top independent aerospace and defense suppliers globally by revenue. It will have more than 16,000 employees, manufacturing operations in 14 countries on five continents, and a diversified customer base across multiple markets. For each company's respective fiscal year 2019 on a pro forma basis, the combined company is expected to generate net revenues of approximately $5.3 billion and EBITDA of $1.1 billion, or a 21% EBITDA margin.

Nick Stanage, Chairman, Chief Executive Officer and President of Hexcel, will serve as Chief Executive Officer of the combined company. Tom Gendron, Chairman, Chief Executive Officer and President of Woodward, will serve as Executive Chairman of the combined company until the first anniversary of the closing of the merger, at which time Mr. Gendron intends to retire from the company and will then serve as non-executive Chairman of the combined company until the second anniversary of the merger close. At that point, Mr. Stanage will assume the role of Chairman of the Board in addition to his CEO responsibilities. The combined company's Board of Directors will have 10 members, consisting of five directors from each company, including Mr. Gendron and Mr. Stanage.

\* \* \*

Strategic and financial benefits of the merger include:

- **Creates leading company well positioned to deliver forward-looking technologies to address evolving customer needs**. The transaction unites industry leaders in advanced materials and control systems to create a premier aerospace and industrial leader well positioned to satisfy customer demands for aircraft aerodynamics, energy efficiency, improved safety, and reduced emissions and noise. The combined company expects to spend approximately $250 million on research and development in the first full year post-closing and will have greater resources to invest in emerging technologies to support next-generation aerospace customer programs and accelerate innovation in aerodynamics, propulsion, and energy efficiency.

- **Well-balanced portfolio across customers, end markets, and investment cycles**. Building on each company's strong existing positions on best-in-class product platforms, the combined company will have greater depth and balance of customer relationships across the aerospace and industrial sectors, with significant opportunities for cross-selling and to enhance customer relationships. The transaction combines both companies' exceptional OEM positions, Hexcel's secular composite penetration, and Woodward's industry-leading aftermarket positions to drive consistent top-line growth and cash flow generation across program lifecycles.
- **Significant shareholder value creation opportunities**. The combined company is expected to realize more than $125 million in annual cost synergies by the second full fiscal year post-closing, primarily from strategic sourcing opportunities, elimination of duplicative corporate costs, leveraging its global footprint and infrastructure, and expanding shared service platforms.
- **Strong balance sheet with significant free cash flow generation and a commitment to a balanced capital allocation strategy**. For each company's respective fiscal year 2019, Woodward Hexcel would have more than $5.3 billion of pro forma revenue and over $1.1 billion of EBITDA or 21% EBITDA margin. Combined free cash flow is forecasted to be approximately $1 billion annually and growing. Woodward Hexcel is expected to be capitalized with a strong balance sheet and a leverage ratio of approximately 1.4x debt/trailing EBITDA at closing. The combined company intends to pursue an investment grade rating, a competitive dividend yield with an initial target of 1%, and deploy cash toward acquisitions and share repurchases, including executing on an expected $1.5 billion share repurchase program within 18 months of closing.
- **Complementary cultures and operating philosophies**. Woodward and Hexcel share similar values and strong track records of high-impact R&D investment. By leveraging our team members' talents and a common focus on operational excellence, Woodward Hexcel will continue to bring innovative products to market while driving operating margin improvements. Together, these actions will continue to deliver significant value to shareholders.

**Headquarters and Transition Team**

Woodward Hexcel will be headquartered in Fort Collins, Colorado. The combined company will be led by a highly experienced and proven leadership team that reflects the strengths and capabilities of both organizations. In addition and to ensure a seamless integration,

7

> Woodward and Hexcel will establish a dedicated integration planning team, led by Bob Weber, Vice Chairman of Woodward, and Rob Hennemuth, Executive Vice President of Human Resources and Communications at Hexcel.
>
> **Approvals and Timing to Close**
> The transaction is subject to the approval of the shareholders of both Woodward and Hexcel, as well as other customary closing conditions, including required regulatory approvals. The parties expect the merger to close in the third calendar quarter of 2020, subject to satisfaction of these conditions.

\* \* \*

24.     The Board has unanimously agreed to Proposed Transaction.  It is therefore imperative that Hexcel's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

25.     On February 28, 2020, Hexcel and Woodward jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide sufficient information.

27. With respect to the *Woodward base prospective financial information, Woodward prospective financial information under the ex-wind contingent scenario*, *Hexcel prospective financial information,* and *Potential combined company synergies*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics EBITDA and Total EBITDA Synergies but fails to provide: (i) the line items used to calculate the non-GAAP measures; or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

        non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

31. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis—Hexcel Standalone*, the Registration Statement fails to disclose: (i) the basis for selecting the discount rate range from 6.5% to 7.5%; (ii) the estimates of unlevered free cash flow for Hexcel for the years 2020 through 2024; (iii) the range of illustrative terminal values for the Company; (iv) the basis of selecting the multiple range of 12.0x to 14.0x; (v) the basis for applying perpetuity growth ranges of 0.9% to 2.6%; (vi) Hexcel's net debt as of December 31, 2019; and (vii) the Company's number of fully diluted shares of common stock as of December 31, 2019.

32. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis—Woodward Standalone*, the Registration Statement fails to disclose: (i) the basis for selecting the discount rate range from 7.0% to 8.0%; (ii) the estimates of unlevered free cash flow for Woodward for the first 9 months of 2020 and for the full calendar years 2021 through 2024; (iii) the range of illustrative terminal values for Woodward; (iv) the basis of selecting the multiple range of 12.0x to 14.0x; (v) the basis for applying perpetuity growth ranges of 1.3% to 3.0%; (vi)

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Woodward's net debt as of December 31, 2019; and (vii) the Woodward's number of fully diluted shares of common stock as of December 31, 2019.

33. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis—Pro Forma Combined Company*, the Registration Statement fails to disclose: (i) the basis for selecting the discount rate range from 6.5% to 7.5%; (ii) the estimates of unlevered free cash flow for the pro forma company for the years 2020 through 2024; (iii) the range of illustrative terminal values for the pro forma combined company; (iv) the basis of selecting the multiple range of 12.0x to 14.0x; (v) the basis for applying perpetuity growth ranges of 0.8% to 2.5%; (vi) estimated net debt of the pro forma combined company as of December 31, 2019; and (vii) the number of fully diluted shares of common stock expected to be outstanding following the closing of the Proposed Transaction.

34. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis – Hexcel Standalone*, the Registration Statement fails to disclose basis for the next twelve months' price-to-earnings per share ratios of 19.0x to 21.0x. Also, the Registration Statement fails to disclose the underlying inputs used to derive the discount rate of 7.50%.

35. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis – Woodward Standalone*, the Registration Statement fails to disclose basis for the next twelve months' price-to-earnings per share ratios of 19.0x to 21.0x. Also, the Registration Statement fails to disclose the underlying inputs used to derive the discount rate of 8.00%.

36. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis – Pro Forma Combined Company*, the Registration Statement fails to disclose basis for the next twelve months' price-to-earnings per share ratios of 19.0x to 21.0x. Also, the Registration Statement fails to disclose the underlying inputs used to derive the discount rate of 8.00%.

37. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Hexcel within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Hexcel, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Hexcel, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Hexcel, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

48. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 6, 2020

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*